IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Calvin L Gaddy , | ) | Case No. 8:12-cv-03549-JFA-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Robert Ward, Ann Hallman, | ) | |
| Warden Larry Cartledge, Amy Machann, | ) | |
| and the Attorney General's Office,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 58.] Plaintiff, proceeding pro se, brought this action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action against Defendants Robert Ward ("Ward"), Ann Hallman ("Hallman"), Larry Cartledge[2] ("Cartledge"), Amy McMahan[3] ("McMahan"), and the Attorney General's Office ("the AG's Office"; collectively "Defendants"), complaining that he has never been legally indicted by a grand jury and that "Perry CI" keeps violating his due process rights. [Doc. 1 at 2.] On March 19, 2013, Defendants filed a motion for summary

---

[1]Defendant Donald Altman was dismissed as a party to this action on June 4, 2013. [Doc. 81.]

[2]Although Plaintiff lists this defendant as Larry "Cartiledge," his affidavit is signed by Larry "Cartledge." [Doc. 58-4.]

[3]Although Plaintiff lists this defendant as Amy "Machann," her affidavit is signed as Amy "McMahan." [Doc. 58-2.]

judgment. [Doc. 58.] On March 20, 2013, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 63.] On April 3, 2013, Plaintiff filed a response in opposition to Defendants' motion [Doc. 65] and, on April 5, 2013, Defendants filed a reply [Doc. 67]. Accordingly, the motion is ripe for review.

## BACKGROUND

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Perry Correctional Institution ("Perry").[4] [Doc. 1 at 2.] Plaintiff alleges that on the morning of June 30, 2012, he was at work to clean and wash floors when McMahan caused a conflict between Plaintiff and another inmate, causing Plaintiff to be removed from his job and sent to a holding cell. [*Id.* at 4.] Plaintiff alleges that when McMahan returned to work on July 1, 2012 and saw Plaintiff going to church services, she made a bogus incident report against him. [*Id.* at 5.] Plaintiff claims that DHO Turner refused Plaintiff's statements and denied him due process. [*Id.*] Plaintiff requests a preliminary hearing and injunction against the state, a transfer to Broad River to be close to his mother and children, and damages against Defendants in the amount of $100.00 dollars for each day he was on lock up under the bogus charge. [*Id.* at 6.]

---

[4]Plaintiff was transferred to Lieber Correctional Institution during the pendency of this action. [*See* Doc. 93 (notice of change of address).]

2

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.  Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

3

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may

4

fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

A determination of whether a private party's allegedly unconstitutional conduct is fairly

attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct

of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51

(quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has

moved for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would

affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When

determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating

to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the

non-moving party, to survive the motion for summary judgment, may not rest on the

allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue the Complaint fails to state a claim against Ward, Hallman, Cartledge, and Wilson; matters asserted by Plaintiff do not fall within the scope of § 1983; Defendants are entitled to qualified immunity; Plaintiff's Complaint should be dismissed pursuant to the Prison Litigation Reform Act; Cartledge, Ward, and Hallman cannot be held liable in any supervisory capacity; while acting in their official capacities, Defendants are not "persons" under § 1983; Defendants are entitled to Eleventh Amendment Immunity in their official capacities; and the claims should be dismissed as frivolous under 28 U.S.C. §§ 1915(e)(2))B)(I) and 1915A(b)(1)(1999).   [Doc. 58-1.]   The Court agrees summary judgment should be granted.

### Claims for Injunctive and/or Declaratory Relief are Moot

As an initial matter, because Plaintiff is no longer incarcerated at Perry [*see* Doc. 93 (notice of change of address indicating Plaintiff was transferred to Lieber Correctional Insitution)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief.  *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief was moot).   Plaintiff's claims for monetary damages, however, survive his transfer from Perry, *id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities[5] in a § 1983

---

[5] To the extent Plaintiff brings this suit against Defendants in their official capacities, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages.  The Eleventh Amendment prohibits federal courts from entertaining an action against a state.  *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

7

lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).   Nevertheless, for the reasons set forth below as to Plaintiff's damages claims, the evidence is insufficient to create a genuine issue of fact as to whether Defendants violated Plaintiff's constitutional rights.

**Defendants Ward, Hallman, Cartledge, and the AG's Office**

Initially, the Court notes that Ward, Hallman, Cartledge, and the AG's Office[6] are not even mentioned in the text of the Complaint other than to list them as parties and in the caption of the Complaint.   There is no indication these Defendants were present or had anything to do with any of the events set forth in the Complaint.   Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983).   A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

---

Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983.  *Id.*  As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

[6]Plaintiff's Complaint states he was never legally indicted by a grand jury. [Doc. 1 at 2.] To the extent this can be construed to bring claims against the AG's office, Plaintiff's claim fails.  The South Carolina Attorney General and the South Carolina Assistant Attorney Generals have absolute immunity from personal liability under § 1983 because they are entitled to prosecutorial immunity for activities intimately associated with the judicial phase of the criminal process.  *See, e.g., Williams v. Condon*, 553 S.E.2d 496 (S.C. App. 2001); *Garrett v. McMaster*, 2008 WL 3411673 (D.S.C. Aug. 11, 2008) (finding that the Attorney General and a former Assistant Attorney General had prosecutorial immunity for conduct related to presenting the State's case).

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[7]

*Id.* (citations omitted).  Plaintiff has failed to allege any facts to demonstrate any personal or supervisory wrongdoing by Ward, Hallman, Cartledge, or the AG's Office, and therefore, these Defendants are entitled to summary judgment.  The Court will review Plaintiff's Complaint with respect to the remaining Defendant McMahan.

**Claims Against McMahan**

Plaintiff appears to argue his due process rights were violated because the report filed by McMahan, which led to Plaintiff's disciplinary hearing, was "bogus," a "conspiracy," and "fraud."  [Doc. 1 at 6.]  Plaintiff complains that his disciplinary hearing resulted in the

---

[7]Stated differently,

"[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)).  A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 693 (2009) (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely.  The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects.").  A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'"  *Id.* at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)).  Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.  *See Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

deprivation of good time credits, being put on lock-up, and losing everything for one year including phone, canteen, and job.[8]  [*Id.*]  Defendants contend that Plaintiff cannot bring a constitutional claim concerning his disciplinary conviction because he fails to show that the conviction was overturned.  [Doc. 58-1 at 6–8.]  The Court agrees.

Plaintiff's claims concerning his disciplinary proceedings are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994),[9] and *Edwards v. Balisok*, 520 U.S. 641 (1997) (*Heck* precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); *see also Kerr v. Orellana*, 969 F. Supp. 357 (E.D. Va. 1997) (holding that a prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under *Heck*).  Plaintiff has not shown he successfully attacked his disciplinary hearing conviction.  Plaintiff cannot maintain a § 1983 action, whether for restoration of good-time credits, monetary damages, or injunctive relief related to the hearing, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding.  Here, awarding damages to Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing and, thus, his claim is barred under *Heck* and *Edwards*.

---

[8]Plaintiff also alleges that the disciplinary hearing officer refused to hear his statement [Doc. 1 at 5]; that the "Perry charging assistan[t]" did not turn in his statement with his supporting memorandum regarding his mental health classification [Doc. 1-1 at 2]; and that his "sit-in-counsel on July 19th" was not mental health certified, was not aware of his mental problems and knew nothing about the medication Plaintiff took on a daily basis [*id.* at 3].  However, the disciplinary hearing officer, the "Perry charging assistan[t]," and Plaintiff's counsel from the hearing are not parties to this action.  Accordingly, the Court declines to address these specific allegations.

[9]The Supreme Court, in *Heck v. Humphrey*, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

Further, to the extent Plaintiff is seeking the restoration of good time credits lost as a result of his conviction during the disciplinary hearing based on alleged due process violations, such relief is also not available under §1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (a prisoner seeking the restoration of good time credits may only do so by way of a petition for writ of habeas corpus).  And, even assuming McMahan's accusations were false, this allegation alone does not implicate a constitutional right as long as Plaintiff had an opportunity to rebut the charges.  *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002); *Freeman v. Rideout*, 808 F.2d 949, 952–53 (2d Cir. 1986) (holding that the filing of unfounded or false charges does not amount to a constitutional violation actionable under § 1983 so long as the inmate was provided with due process to rebut the unfounded or false charges).  Accordingly, Defendants' motion for summary judgment should be granted with respect to the due process claim against McMahan.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity for any alleged failure to provide appropriate medical care.  The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would

11

have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Here, as discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights.  Therefore, the Court finds Defendants are entitled to qualified immunity.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 3, 2014
Greenville, South Carolina

12